UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
V. ) No. 05-10035-PBS
)
MARYSOL MORALES )

**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE**

The defendant submits that this Court should sentence the defendant to twelve months of incarceration, followed by twelve months of home confinement and thereafter, two years of supervised release. In addition, the defendant moves that the Court depart downward when considering the Sentencing Guidelines based upon the unique circumstances presented by this case.

**BACKGROUND**

Marysol Morales is a forty-two year old woman with no criminal record. She was born in Puerto Rico and moved to New Jersey when she was an infant. The family moved to Massachusetts when Marysol was eight years old. Her family was a hard working one, often doing odd jobs around town to make ends meet. When she was about seventeen years old, Marysol went to Puerto Rico and met Hector Rodriguez. She fell in love and stayed with him

in Puerto Rico. After four or five years, Marysol missed her family and moved back to Massachusetts with Hector.

Marysol and Hector have two daughters, Masary who is twenty-three and Masairi who is nineteen. They all live in Brockton. Marysol, throughout much of her life, has gone from one temporary job to another. Hector’s income has also not been substantial. Since 2001, Hector, Marysol, Masary and her two year old son, have lived in a three bedroom duplex home in Brockton. Their biggest asset was this home which had a value of approximately $200,000. However, the house was recently seized by the Avon Housing Authority to support a judgment it obtained in a civil suit against the defendant. The defendant’s family was evicted from the home by the Sheriff on July 26, 2006.

Marysol has been convicted of a crime and she knows she will be punished. Determining the appropriate sentence in a case such as this is extremely difficult. This is an unusual situation because the person who committed the crime did not substantially benefit from it. In every instance where a person paid funds to Marysol, the Avon Housing Authority did not pay out any benefits whatsoever. Thus, the actual loss to the agency in these instances is zero.

In the situations where Marysol gave vouchers to persons without her receiving any monetary or other benefit, the funds

spent by the Avon Housing Authority went toward housing for persons who normally would have received this benefit but who were on a waiting list. There is no evidence to support that Marysol received any money for giving 92 families the vouchers; indeed, the government's evidence from persons interviewed is to the contrary. The simplistic belief by the defendant that the government would honor the vouchers, even if improperly issued, was not borne out by subsequent events, and Marysol should not be lauded for her actions. She committed crimes against the United States. However, her actions in giving vouchers to persons who, in a moral sense, deserved them, without receipt by Marysol of anything of value, is what takes this case out of the heartland of most economic crimes cases.

## I. CONTROLLING LEGAL PRINCIPLES

Perhaps the best statement of the role of judges in sentencing in criminal cases was set forth by the Supreme Court in United States v. Koon, 518 U.S. 81, 113 (1996):

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

The individuality of each defendant and the uniqueness of each case was largely removed from the consideration of federal

judges by the United States Sentencing Guidelines in 1987. The Supreme Court in United States v. Booker, 543 U.S. 220 (2005), however, restored to the district courts the ability to fashion a sentence tailored to the unique circumstances of each case and the individual situation of each defendant by requiring sentencing judges to consider factors other than the sentencing ranges prescribed by the Guidelines. Under 18 U.S.C. § 3553(a), judges are required to sentence below the guideline range if such a sentence would be sufficient to achieve the purposes of the statute. The guideline sentencing range is only one of five co-equal factors to be considered in determining a sentence. Id. at 259-260. The other four factors are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentencing disparity; and (4) the need to provide restitution. Ibid.

In light of Booker, the Guidelines are advisory, not mandatory. United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006). They maintain substantial, but not controlling weight. If there are clearly identified and persuasive reasons why the Court ought not to impose a sentence within the Guideline range, it should consider those reasons and impose a sentence accordingly. Id. at 516. Booker “makes it possible for

courts to impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness." Id. at 518.

In the case at bar, there is "a plausible explanation and a defensible overall result" for the imposition of a sentence below the advisory Guideline sentencing range. Id. at 519. In deciding the appropriate sentence for Ms. Morales, the Court should proceed according to the three-step sequence endorsed by the First Circuit in Jimenez-Beltre at 518-519: (1) determine the applicable Guideline sentencing range; (2) consider whether to depart from that range; and (3) decide "whether other factors identified by either side warrant an ultimate sentence above or below the guideline range."

## II. THE SENTENCING GUIDELINES

The base offense level for the bribery counts pursuant to § 2C1.1(a)(1) of the Sentencing Guidelines is 14 because the defendant was a "public official." The defendant agrees that pursuant to § 2C1.1(b)(1), a 2-level increase is applicable because there was more than one bribe. Without any further specific offense characteristics or victim related adjustments, the offense level would be 16.

However, the Guideline range computed in the presentence report is driven upward by three adjustments which are

unwarranted: (1) an assertion in ¶ 60 that the amount of the loss is $38,400 and warrants a 6-level increase pursuant to § 2B1.1(b)(1); (2) a conclusion that Ms. Morales was in a "high-level decision making or sensitive position and warrants a 4-level increase pursuant to § 2C1.1(b)(4); and (3) a contention that the defendant knew that a victim of the offense was a vulnerable victim, and warrants a 2-level increase pursuant to § 3A1.1(b)(1). The defendant objects to all three enhancements.

**A. Amount of Loss**

The presentence report calculates the loss sum by taking into consideration the estimated value of each HAP contract for one year (approximately $9,600). Since Ms. Morales was found guilty of accepting four improper payments, the estimated value of the bribes would be $38,400. Pursuant to the Guidelines, this would increase the offense level by six points. In this case, however, none of the persons who made the improper payments received anything in return. The defendant submits that a fairer calculation of the loss is the amount of the bribes paid by the victims:

| | |
|---|---|
| Ja'net Montissol - | $2,600 |
| Vilma Nunez - | $5,000 |
| Airin Gonzalez - | $6,500 |
| | $14,100 |

A loss of $14,100 would increase the offense level by four points.[1]

**B. High-level Decision Maker**

The presentence report also increases the offense level by four points pursuant to § 2C1.1(b)(4). The Application Notes to § 2C1.1 define a high-level decision-making position as "a position characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision making process ... Examples of a public official in a high-level decision-making position include a prosecuting attorney, a judge, an agency administrator, and any other public official with a similar level of authority.

Contrary to the allegations in the presentence report, Ms. Morales was not in a high-level decision making position at the Avon Housing Authority. She was one of just four employees, with only the maintenance man below her in the hierarchy. There is no question that Ms. Morales had responsibilities with the agency which included completing lease paperwork and preparing invoices and checks. Issuing vouchers was not supposed to be a discretionary function. In her role as "housing manager," Ms.

[1] Even the Government concedes that Belkis Ortiz and Alenairam Mejia should not be treated as victims because they knew that Marysol Morales was committing a crime by taking a bribe and granting them subsidized housing. See ¶ 49 of the PSR.

Morales was not supposed to make decisions on whether a person qualified for a housing voucher. As the Court knows from the trial, this determination was made solely based on a person (or family's) income and number of family members. Additionally, a person or family may have been eligible, but did not receive benefits until their name came off the waiting list. See e.g., United States v. Stephenson, 895 F.2d 867, 877-78 (2nd Cir. 1990)(affirming denial of sensitive position where employee's discretion was minor and low level).

Cases where the adjustment was warranted include when the defendant was a supervisor of other employees, made public policy, or influenced policy makers. See e.g., United States v. Gatling, 96 F.3d 1511, 1526 (D.C.Cir. 1996)(Chief of the Section 8 Division, supervised a 23-person staff, ran the section 8 program, was the top official within the Section 8 Division and lowered the possibility that the section 8 subsidies she had illegally issued would be uncovered); United States v. Matzkin, 14 F.3d 1014, 1021 (4th Cir. 1994)(branch head, who supervised other engineers, was a high-level official because he had "responsibility for technical aspects of major procurements," access to valuable inside information, and influence on purchasing decisions); United States v. Sun-Diamond Growers of Cal., 138 F.3d 961, 975-76 (D.C.Cir.1998)(Secretary of

Agriculture); United States v. Tomblin, 46 F.3d 1369, 1391 (5th Cir.1995)(top aide to a U.S. senator); United States v. ReBrook, 58 F.3d 961, 970 (4th Cir.1995)(attorney for the state's lottery commission).

Ms. Morales was the equivalent of a clerk at a counter at the Registry of Motor Vehicles. She could issue a voucher, comparable to a driver's license, but this does not make her a "high level decision maker." It is not simply being a "decision maker" that qualifies a person for the enhancement; she must also be a "high level" employee in the organization. The intention of the enhancement is to punish persons who supervised other employees, or made public policy, because the impact of that persons actions would be far-reaching. To apply the enhancement in this case would be contrary to the intent of the Guidelines. A four-level enhancement is not warranted.

**C. Vulnerable Victim**

The presentence report also provides a two-level increase pursuant to § 3A1.1(b)(1) because a "vulnerable victim" was involved. Ms. Morales does not dispute that the women who applied for the section 8 housing were poor, had a limited education, and were often single mothers. However, in this case, the "vulnerability" of these victims was part of the crime itself. "Susceptibility to the defendant's scheme alone is not

enough to qualify victims as unusually vulnerable." United States v. Garza, 429 F.3d 165, 173-174 (5th Cir. 2005)(internal quotations omitted). This enhancement applies only if the "the defendant selects his victim due to the defendant's perception of the victim's vulnerability to the offense." United States v. Arguedas, 86 F.3d 1054, 1058 (11th Cir. 1996). This enhancement should be given only if the defendant knows that the victim has "unique characteristics" that make her more vulnerable to the crime than other potential victims of the crime. United States v. Phillips, 287 F.3d 1053, 1056-1057 (11th Cir. 2002).

In this case, the victims were no more vulnerable than any other potential victims of this type of fraud, i.e., other people who were seeking housing. They were no more susceptible than a wealthy individual who paid money to a broker for a luxury condominium that did not exist. None of the victims in this case was specifically targeted because she was poor, or a single mother, or pregnant. These qualifications weren't what made them "vulnerable;" it was the fact that they qualified for subsidized housing that made them susceptible to this fraud, and that is categorically different than a scam artist who preys on mentally challenged elderly persons, or others who are uniquely vulnerable to the fraud. In other words, every single one of the thousands of individuals on the section 8 housing waiting list

would have to be termed a vulnerable victim, and this distorts the purpose of the enhancement, which is reserved for a particular subgroup of individuals in the overall class of potential victims. A two-level increase is not warranted.

If the Court accepts that Ms. Morales should receive a 4-level increase for the loss figure and that no increase is warranted pursuant to § 2C1.1(b)(4) [high-level decision maker] or § 3A1.1(b)(1) [vulnerable victim], her adjusted offense level would be 20 and the sentencing range pursuant to the Guidelines would be 33 to 41 months.

## III. OTHER FACTORS UNDER 18 U.S.C. § 3553

### A. 18 U.S.C. § 3553

The primary mandate of 18 U.S.C. § 3553(a) is that courts should impose a minimally sufficient sentence to achieve the statutory purposes of punishment. Section 3553(a) states, “The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.” This provision, known as “the parsimony principle,” is not merely a factor to be considered in determining a sentence. Instead, it represents a cap above which a sentencing judge is statutorily prohibited from sentencing, even when a greater sentence is indicated by the sentencing

guidelines. See United States v. Denardi, 892 F.2d 269, 276-77 (3rd Cir. 1989).

The Court, in determining the appropriate sentence to be imposed upon Ms. Morales consonant with the "parsimony principle," should consider the following factors set forth in 18 U.S.C. § 3553(a):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant and

(2) the need for the sentence imposed –

(a) to reflect the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense;

(b) to afford adequate deterrence to criminal conduct;

(c) to protect the public from further crimes of the defendant; and

(d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

**B. Loss Reconsidered and Civil Punishment**

The amount of loss that a given crime has engendered is surely one measure of the seriousness of the offense. In this case, the government certainly lost money, but none of it ended up in the defendant's pocket. Even pre-Booker, the loss was not

an automatic measurement of culpability. For example, a judge could consider whether the amount of loss overstated the defendant's culpability. U.S.S.G. § 2B1.1, Appl. Note 19(C). Moreover, Ms. Morales has already been punished by a civil proceeding brought against her by the Avon Housing Authority. In that proceeding, her home has been taken from her and her family. This was the only real asset which Ms. Morales and her family owned.

Recently, a defendant in this Court was charged with wire fraud. She fraudulently obtained funds from various not-for-profit companies. From twenty of these companies, the defendant stole over $800,000. Some of that money was recovered, but the "intended loss" was still high. The defendant had no criminal record and did not ask for, or receive any, downward departures. She was sentenced to 24 months in prison. See United States v. Whidbee, No. 05-10313-GAO. The intended loss in this case was much less than that in Whidbee. Marysol's sentence should be comparable with that of Whidbee.

**CONCLUSION**

Breaking the law, no matter what the circumstances, is never the right thing to do. Marysol Morales is well aware of this now. For these reasons, she urges that the court sentence her to incarceration for twelve months, twelve months of home

confinement, impose no fine due to her inability to pay, order her to pay restitution in the amount of $20,100 to the people from whom she accepted bribes, and be on supervised release for a period of two years.

Marysol Morales
By Her Attorneys

/s/ Andrew M. D'Angelo

J. W. Carney, Jr.
B.B.O. # 074760
Andrew M. D'Angelo
B.B.O. # 564200
CARNEY & BASSIL
20 Park Plaza, Ste. 1405
Boston, MA 02116
617-338-5566

Date: July 27, 2006